## Wadford Estate

*Edward N. Cahn*, for accountant.

COYNE, P. J., January 13, 1967.—The first and final account of Cleora M. Biehn, administratrix of the estate of Eleanor M. Wadford, deceased, is before this court for audit.

Eleanor M. Wadford died intestate on January 1, 1966, and letters of administration were granted on her estate by the Register of Wills of Lehigh County on January 10, 1966.

Decedent was survived by a husband, Tom J. Wadford, who, according to uncontradicted testimony received at the audit of the within account, deserted decedent without cause on July 6, 1952, which desertion persisted without interruption until decedent's death. Decedent left no issue surviving.

According to affidavits filed with the court, decedent's heirs consist of four maternal aunts, Aureata Hertzog, Mildred Sterner, Ruth Long and Cleora M. Biehn, and a maternal uncle, Stanley Breisch. In addition, there are a half sister, Irene Aurrickio, and a half brother, Ralph C. Fleischman, Jr., whose identities and locations were discovered after the account was filed, and whose presence presents a curious problem.

Decedent's mother, Lillian S. A. Fleischman, obtained a divorce from decedent's father, Ralph C. Fleischman, on the ground of desertion pursuant to a decree of the Court of Common Pleas of Lehigh County dated April 23, 1923, and entered in April term, 1923, no. 77. Thereafter, Lillian Fleischman entered into two other marriages and died on September 19, 1954, without issue other than decedent. Ralph C. Fleischman also remarried and then died on December 6, 1956, leaving to survive him two children of his second marriage. These children are the half sister and half brother of decedent.

The account discloses a cash balance in hand for distribution in the sum of $3,000, which accountant proposes to distribute in five equal shares among the maternal aunts and uncle. The statement of proposed distribution raises the question of whether or not the

half sister and half brother are entitled to share in the distribution.

Accountant has submitted a memorandum of law in support of the statement of proposed distribution which refers to two lower court cases. Schied's Estate, 31 Lanc. 253 (1914), holds that the father of an intestate cannot inherit where he deserted and abandoned his wife and children 38 years prior to the death of his daughter, unless he rebuts the presumption that he intended to abandon all interest in their property. This conclusion is reached on the theory of a constructive transfer by the deserting father to the deserted family of any interest which he may have had in their estates. The case does not consider the status of children of a second marriage, and, presumably, anyone following Schied's Estate would have to conclude that the action of the deserting father would be chargeable against any intestate heirs of decedent who were related to the latter through the deserting father.

Meisenhelter's Estate, 42 York 170 (1928), holds that under the Intestate Act of June 7, 1917, P.L. 429, abandonment by a father of his infant son is not a bar to the father's subsequent inheritance from his son's estate. This case, likewise, does not consider the position of children of a second marriage who are related to decedent through the deserting father.

In our opinion, neither of the cases cited is pertinent, and we shall render an independent analysis.

From the very inception of the common law, it has been recognized that transmission of property at death by will or otherwise is not a natural right, but a privilege extended by the sovereign to individuals by means of statutory grants. Through the medium of applicable legislation, this privilege has been converted into statutory rights. As a result, the burden rests upon the person who claims an inheritance to point to the law which transmits it to him. Whether legislation

is, in all respects and under all circumstances, just and wise is not for the courts to say, so long as such legislation represents a proper constitutional exercise of the legislative power. So, in the case at hand, those claiming as heirs must predicate their claims upon the provisions of the Intestate Act of April 24, 1947, P. L. 80, as amended, 20 PS §1 et seq. Section 3(3) of that act, 20 PS §1.3(3), very briefly and bluntly specifies that if "no parent survives the decedent" the estate shall descend "to the issue of *each* of the decedent's parents". (Italics supplied). Section 3(5), 20 PS §1.3(5), then provides that if no parent and no issue of either parent and no grandparents survive, the estate shall descend to uncles and aunts of decedent. Section 4(2), 20 PS §1.4(2), just as clearly provides that all persons "taking under this act shall take without distinction between those of the whole and those of the half blood". Sections 6(a) and (b), 20 PS §§1.6(a) and (b), provide for forfeiture of the husband's intestate share in his wife's estate where he wilfully neglects or refuses to provide for his wife or wilfully and maliciously deserts her for a period of one year or upwards prior to her death, and for forfeiture of the wife's intestate share of her husband's estate where she wilfully and maliciously deserts him for the aforementioned period of time. These subsections contain the only mention of the term desertion and its effect upon inheritance in the whole of the Intestate Act of 1947.

This court is of the opinion that the sections of the Intestate Act of 1947 are absolutely clear and completely free of any ambiguity or doubtful phraseology. No question of statutory construction is, therefore, involved. Moreover, the application of the statutory provisions to the facts at hand clearly dictates that the entire net estate be distributed equally between the half brother and half sister of the decedent. The

fact that such a conclusion results in the distribution of this estate to heirs who, for all practical purposes, are utter strangers to decedent is beside the point. The legislature has set forth in clear and unequivocable language the rules governing descent. If, as seems to be the case here, the application of those rules results in an unjust result, then the remedy lies in amending the legislation, not in the court's contorting legislation to fit the emotional appeal of a situation.

So far as the aunts and the uncle are concerned, there is one saving feature in this case. Both the half sister and half brother were supplied, by registered mail directed to addressee only, a complete copy of the account, statement of proposed distribution and attached exhibits, including the memorandum of law wherein counsel for accountant has urged upon the court distribution to the aunts and the uncle, more than three weeks prior to the date on which the court took up the question of distribution on December 27, 1966. No objections to the statement of proposed distribution have been filed, and no one appeared on the last mentioned date to press the claims of the relatives of the half blood. The auditing judge is of the opinion, based on the record, that the latter had complete and ample notice of these proceedings, of the particular distributional problem which involved them, and of accountant's intention to resolve this question against them. Under the rules of this court, their failure to appear will be construed as an approval of the statement of proposed distribution as presented. Consequently, the statement of proposed distribution will be approved as presented.

Notice of the filing of the account and audit thereof was given by registered mail to all of the parties in interest, as evidenced by the affidavits of notice which have been filed with the court and to which affidavits

are attached copies of the notices and the return receipt cards.

No objections have been filed to the account or to the statement of proposed distribution as presented. . . .

This decree shall become final unless exceptions thereto are filed within 15 days after service of this adjudication and order in accordance with the rules of court.